UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SALVATORE ZICCARELLI,                      )
                                           )
        Plaintiff,                         )        No. 13 C 04391
                                           )
        v.                                 )
                                           )        Judge Edmond E. Chang
THOMAS J. DART, Sheriff of Cook County,    )
and COOK COUNTY,                           )
                                           )
        Defendants.                        )

## ORDER

Plaintiff Salvatore Ziccarelli, a correctional officer for the Cook County Sheriff's Office, brings this suit, his second in this Court in two years, against Defendants Thomas J. Dart, who is the Sheriff of Cook County, and Cook County. Ziccarelli alleges workplace harassment and disparate treatment on the basis of his sex, national origin, and disability, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*[1] Defendants now move for summary judgment against Ziccarelli's various claims. As explained below, the motion is granted.

## I. Background

Ziccarelli, who remains employed as a correctional officer at Cook County Jail, is a white male and was 49 years old at the time he filed the present complaint

---

[1] In this federal-question case, the Court exercises jurisdiction under 28 U.S.C. § 1331.

in 2013. DSOF ¶¶ 1, 2.[2] He is Italian American. R. 30-2, Ziccarelli Tr. at 12. In 2011, Ziccarelli filed his first lawsuit against Dart and Cook County; another District Judge granted summary judgment against Ziccarelli in that case, and the Seventh Circuit recently affirmed the decision. *Ziccarelli v. Dart*, 581 F. App'x 563 (7th Cir. 2014), *reh'g denied* (Dec. 15, 2014). For background predating this case, this Court now draws on facts described by the Seventh Circuit's affirmance order.These facts were undisputed and are presented in the light most favorable to Ziccarelli. *Id.* at 563.

After 25 years working for the Cook County Sheriff's Department, in 2009, Ziccarelli began to assert a number of workplace grievances, including: not receiving enough "lunch premiums" (extra compensation provided to guards who work through lunch as necessary), being overly assigned to "cross-watching" (intensive duty involving monitoring two tiers of inmates), being denied a normal rotation of job assignments, and being retaliated against for filing grievances in the form of a disciplinary write-up for forgetting his utility belt in a washroom and a complaint against him that was allegedly coerced from a coworker. *Id.* at 563-64. Ziccarelli asserted that this treatment was discrimination on the basis of his age, race, and sex, but the District Court granted summary judgment against him and the

---

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the page or paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Dart and Cook County's Statement of Facts) [R. 29]; "PSOF" (for Ziccarelli's Statement of Additional Facts) [R. 41]; "Pl.'s Resp. DSOF" (for Ziccarelli's response to Defendants' Statement of Facts [R. 42]); and "Def.'s Resp. PSOF" (for Dart and Cook County's Response to Ziccarelli's Statement of Additional Facts) [R. 51], followed by the paragraph number. Where a fact is undisputed, only the asserting party's statement of facts is cited.

Seventh Circuit affirmed, finding that he did not show that he had suffered adverse employment actions that were not a normal part of his job, or that were more than trivial inconveniences. *Id.* at 564-67.

While his first lawsuit was still pending, Ziccarelli commenced the present action, alleging that he had been discriminated against on the basis of sex and national origin, that he had been denied a reasonable accommodation under the ADA, and that he had been retaliated against in violation of Title VII, the ADA, and the FMLA. R. 1, Compl..  Some of the complained-of conduct is identical to that in the first action. Specifically, the complaint in this case alleges that Ziccarelli has been harassed, denied premiums and "time due" payments, denied copies of his timecard, denied more favorable work assignments despite his seniority, placed in elevated risk situations without backup, forced to cross-watch, denied promotion to the rank of sergeant, forced to work all eight hours of his shift when others were allowed to leave early, and moved to "Post 5," the least desirable assignment at the jail. *Id.* ¶¶ 9-12. With regard to a time frame of this alleged discrimination, the pleadings state only that these actions occurred sometime before March 13, 2013. *Id.*

The parties, and in particular Ziccarelli, have not developed much of any factual record concerning the majority of these claims as part of the present motion. On the failure-to-promote claim, it is undisputed that Ziccarelli took the Sheriff's Office examination for sergeant in 2009 and received a score that ranked him 102 out of a total 142 on the promotion list and that he was not promoted off that list

because the number of openings did not reach down as far as 102. DSOF ¶ 7. Ziccarelli did not retake the exam when offered in 2011 and 2013. *Id.* ¶ 8. Zicccarelli was also interviewed as part of the promotion process and contends that, despite a very good interview, he was denied advancement. *Id.* ¶ 12. He believes that a female officer named Villarreal, who was promoted to sergeant, should not have been promoted ahead of him because she did not have as much experience. *Id.* ¶ 9. That is all Ziccarelli offers on this issue.

As for lunch premiums, Ziccarelli admits that he has received an upsurge in this form of extra compensation between 2012 and 2014, that is, after he filed the first federal complaint. *Id.* ¶ 18; Pl.'s Resp. DSOF ¶ 18. As for conflicts over Ziccarelli's work assignments, he acknowledges that he in fact received the position that he bid for, after receiving assistance from his union representative. DSOF ¶ 34; Pl.'s Resp. DSOF ¶ 34. With regard to other guards being allowed to leave early, Ziccarelli admits that this assertion is based on his personal observations and that he does not know if these coworkers were taking some kind of leave. DSOF ¶ 36; Pl.'s Resp. DSOF ¶ 36. Ziccarelli also conceded during his deposition that he could not identify any coworkers who were similarly situated to him that were treated favorably in comparison to him based on the fact that they did not file EEOC charges or had FMLA claims. DSOF ¶¶ 39, 40.

For their part, and for purposes of the motion, Defendants acknowledge that Lieutenants Waller and Martinez, who are Ziccarelli's supervisors and neither of whom are of Italian-American ancestry, verbally harassed Ziccarelli on a constant

basis, all while his first lawsuit was pending. PSOF ¶¶ 1, 4, 6. For around a year, Martinez refused to call Ziccarelli by name and instead referred to him as "Shitarelli" and "mother fucker" while Waller laughed, never taking any steps to stop the abusive language. PSOF ¶ 4. At an undefined time, Waller told Ziccarelli that the latter was "too comfortable" in his post at John H. Stroger Hospital, to which Ziccarelli was assigned in 2013, and informed Ziccarelli that he (Waller) would see to it that Ziccarelli was rotated to less desirable assignments. *Id.* ¶ 2. Martinez also rebuked Ziccarelli and threated to reassign him. *Id.* Ziccarelli was later assigned to Post 5 at the Cook County Jail, which Ziccarelli characterizes as an undesirable assignment, where he had to engage in an unspecified repetitive arm motion despite a physician's note stating he should not. *Id.* ¶ 3. Defendants deny that Post 5 is an undesirable, rather than a routine assignment, and deny that Ziccarelli had any health restrictions to a particular post. Defs.' Resp. PSOF ¶ 3.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make

credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Discussion

Defendants move for summary judgment against Ziccarelli's hodge-podge of claims, some of which overlap with those asserted in his previous lawsuit. Indeed, Ziccarelli acknowledges that his present complaint "discuss[es]" many of the same allegations and "concedes that matters which are the subject of the prior action cannot also be prosecuted as part of this action." R. 43-1, Pl.'s Resp. Br. at 2. Ziccarelli does not identify to which specific matters he refers but, in any event, the focus of his opposition brief and his very limited statement of facts (there are only six in total) makes clear that he really only has two arrows in the quiver: that he was verbally harassed and was assigned to an unfavorable post because he is Italian-American and in retaliation for filing his first lawsuit. Neither warrants trial.

## A. Waiver of Most Claims

To begin, Ziccarelli does not present, in responding to the summary judgment motion, any facts about the majority of the workplace grievances listed in the complaint—the denial of timecards, having to work all eight hours of his shift, failure to receive premiums, rejected promotion to sergeant, *etc.*—nor does he attempt to rebut Defendants' arguments for summary judgment against them. Moreover, he makes no argument whatsoever in support of his FMLA and ADA claims (nor does he even present any facts related to them) or his contention that he was discriminated against on the basis of his sex. The Seventh Circuit has consistently provided that when a party fails to raise or address an argument in a summary-judgment brief, that argument and related claims are deemed waived. *See, e.g., Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 876 (7th Cir. 2008); *Palmer v. Marion County,* 327 F.3d 588, 597-599 (7th Cir.2003); *Berry v. Delta Airlines, Inc.,* 260 F.3d 803, 810 (7th Cir. 2001). To be sure, if it is possible for a district court to figure out on its own that, even on the uncontroverted facts presented by a defendant, summary judgment cannot be granted, then summary judgment should be denied, *see Nabosny v. Podlesny,* 92 F.3d 446, 457 n.9 (7th Cir. 1996), but that limited exception to waiver does not apply here. The only issues that Ziccarelli does raise are the verbal harassment by his supervising officers Waller and Martinez as an expression of national origin discrimination, Pl.'s Resp. Br. at 6, 9, and the retaliatory assignment to Post 5, *id*. at 12. Although it is less clear, Ziccarelli appears to suggest that the hostile work environment created by the name-calling

was also a form of retaliation. *Id.* at 11. Accordingly, Ziccarelli has abandoned all but these specific claims.[3]

## B. Verbal Harassment

Title VII's prohibition against discrimination on the basis of national origin, 42 U.S.C. § 2000e-2(a)(1), means that "[a]n employer is prohibited from requiring employees to work in a discriminatory hostile or abusive environment." *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006) (citing *Harris v. Forklift Systs., Inc.*, 510 U.S. 17, 21 (1993)). An employer is liable for a sufficiently hostile work environment that is created by an employee's supervisor. *Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 (1998)). "To survive summary judgment on a hostile work environment claim based on national origin, a plaintiff must establish that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his [national origin], (3) the harassment was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is

---

[3] Even if the other claims had not been waived, they would not have survived summary judgment. For instance, Ziccarelli's alleged denial of promotion to sergeant occurred in 2009, years before Ziccarelli filed his present EEOC discrimination charge, and is time-barred. *See Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 801 (7th Cir. 2014) ("[A] challenge to an unlawful employment practice must be filed within 300 days of the discrete discriminatory action."). "Moreover, a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) (quoting *Anderson*, 477 U.S. at 248 (1986)) (alteration omitted). Except for the two issues identified, Ziccarelli has presented no factual record whatsoever to substantiate any of his other claims.

a basis for employer liability."[4] *Velez*, 442 F.3d at 1047 (quoting *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005)) (internal quotation marks omitted).

Ziccarelli has not met this standard and cannot show that there is a genuine issue for trial. There is simply no evidence that the name-calling Ziccarelli alleges was based on his national origin. Being called a "mother fucker," while certainly unpleasant, is not inherently discriminatory in nature. *See, e.g.*, *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (verbal outbursts such as "dumb motherfucker" do not "implicate negative attitudes" based on race in themselves). Ziccarelli argues, however, that it is "undisputable" that "Shitarelli" is a slur that "refers to Plaintiff's *Italian* surname." Pl.'s Resp. Br. at 6 (emphasis in original). But that name-calling simply is not, by itself, evidence of national-origin discrimination. It appears to be a crude attempt to address Ziccarelli by a curse word rather than to mock him as an Italian-American. Without any other fact that supports the claim that he was targeted on the basis of his Italian heritage—and

---

[4]Defendants argue, incorrectly, that any hostile work environment claim must fail because the Sheriff had a reasonable policy in place allowing any officer who believes himself to be so victimized to file a complaint, which Ziccarelli failed to do. Defs.' Br. at 9. Under the "basis for employer liability" prong, a plaintiff must establish that "a supervisor participated in the harassment that created the hostile work environment," or that the employer "was negligent in discovering or remedying harassment by his coworkers." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010) (citing *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008)). An employer may evade liability by pointing to the existence and enforcement of a reasonable policy to prevent harassment, but only in cases where that harassment is being perpetrated by non-supervisory coworkers. *Doe v. Oberweis Dairy*, 456 F.3d 704, 716 (7th Cir. 2006). It does not apply as a defense where, as here, the harassers are supervisors. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760-65 (1998).

Ziccarelli provides none—the use of the provocative name alone does not allow Ziccarelli to survive summary judgment.

Read broadly, Ziccarelli's brief could be construed to argue that the alleged harassment was, in addition to an expression of national-origin discrimination, an act of retaliation for filing the first lawsuit. This claim too fails. Although the Seventh Circuit has recognized the concept of retaliatory harassment, *see Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001), in line with the usual requirements of a prima face case of retaliation, a plaintiff must still demonstrate that he suffered an adverse employment action that materially altered the terms and conditions of employment, *see Bell v. E.P.A.*, 232 F.3d 546, 554 (7th Cir. 2000). "Retaliatory harassment by co-workers or a supervisor can rise to this level if it is severe enough to cause a significant change in the plaintiff's employment status." *Stutler*, 263 F.3d at 703. It is true that Ziccarelli asserts that the name-calling caused him stress, anxiety, and other ailments, PSOF ¶ 5, but harassment must be so severe and pervasive that it equates to changing one's workplace conditions, and that standard is not sufficiently set forth in Ziccarelli's bare-bones affidavit. What's more, Ziccarelli presents no evidence, either in his response to the defense Local Rule 56.1 Statement of Facts or in his own additional Statement of Facts, that the alleged harassment was causally connected to the first lawsuit. Yes, the suit was pending when the harassment allegedly occurred, but Ziccarelli does not present evidence, or make a circumstantial-evidence argument, that Martinez (the name-caller) even knew about the lawsuit or had some other reason to retaliate against

10

Ziccarelli for its filing, or that some important event in the lawsuit was close-in-time to the commencement of the harassment.

In sum, because none of the claims arising from the verbal harassment of Ziccarelli present material issues of fact, summary judgment on this claim must be granted.

### C. Unfavorable Assignment

Ziccarelli's second basis to oppose summary judgment is his claim that he was assigned to Post 5, what he calls an undesirable assignment, in retaliation for filing his first lawsuit. Pl.'s Resp. Br. at 11-13.

A detailed discussion of the elements of a retaliation claim is not necessary, because Ziccarelli clearly cannot show at least one of the elements: that he suffered an adverse employment action that more than trivially affected the terms and conditions of employment and would dissuade him from engaging in protected activity. *See Thompson v. N. Am. Stainless LP*, 131 S. Ct. 863, 868 (2011). Ziccarelli raised a similar claim in his first action, alleging that he had been transferred, in retaliation for filing a grievance, to "Division 5" (if this Division 5 is the same as Post 5, presumably he was assigned away from it after he filed the first complaint and then re-assigned to it, again in retaliation, sometime afterward). *Ziccarelli*, 581 F. App'x at 564. The Seventh Circuit affirmed summary judgment to Defendants on Ziccarelli's unfavorable-assignment claim, finding that, his subjective displeasure at the work aside, he had failed to show any evidence that he was treated any differently than other correctional officers in terms of job assignments. *Id.* at 567

11

("[B]eing assigned a less-desirable rotation doesn't rise to the level of a significant negative change in work conditions when other guards share these same rotations and job duties[.]").

This time around, Ziccarelli adds that the assignment (or reassignment, he does not make the chronology clear) to Post 5 was particularly retaliatory because that posting requires repetitive arm motions that he was physically restricted from carrying out. Pl.'s Resp. Br. at 3. But no details are provided about what these repetitive arm motions are, and Ziccarelli does not present any facts about the post or how it is typically staffed, or even that Defendants knew about his arm-motion restrictions. Ziccarelli's attempt to turn the tables on Defendants, arguing that they "chose not to press [him] in deposition questioning" about the issue, Pl.'s Resp. Br. at 13, misapprehends the law: after the party moving for summary judgment has met its initial burden of showing there is no genuine factual dispute, it is the adverse party that must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Nor does Ziccarelli offer any facts about comparable officers, if they exist, with physical restrictions who were allowed to skip Post 5 and who had *not* engaged in protected activity.

What Ziccarelli is left with is, in essence, the same claim based on his displeasure with job rotations that the Seventh Circuit has already rejected. The record consists only of Ziccarelli's own subjective opinion that Post 5 is not desirable, vague complaints of repetitive arm movements, and Ziccarelli's conflicting admission that he did in fact receive the assignments for which he bid

12

and presumably wanted. DSOF ¶ 34; Pl.'s Resp. DSOF ¶ 34. True, Waller told Ziccarelli that he was "too comfortable" in his previous posting at Stroger Hospital. PSOF ¶ 2. Ziccarelli also testified that one of his supervisors told him, in the context of his assignment to Post 5, that "Payback['s] a bitch." Ziccarelli Tr. at 40. (Actually, Ziccarelli initially testified that the supervisor told him "Life's a bitch" before Ziccarelli immediately stopped himself and rephrased the supervisor's statement. *Id.*) But the "payback" comment lacks supporting foundation: Ziccarelli did not, neither in his deposition nor in his affidavit, identify the time period when this comment was allegedly made, who said it (other than a phonetic spelling of a last name and that the speaker has "white skin"), where the conversation took place, and how the speaker was connected (if at all) to the first lawsuit. And neither of the remarks overcomes the fundamental inability to show how the assignment to Post 5 was in any way an adverse action. Accordingly, Defendants are entitled to summary judgment on Ziccarelli's claims related to unfavorable work assignments.

### D. Indemnification by Cook County

Finally, Defendants seek summary judgment for Ziccarelli's claims against Cook County, which has been named as a party purely as an indemnitor for any possible judgment. Defs.' Br. at 12-13. Because summary judgment against Ziccarelli is granted on all claims, summary judgment in favor of Cook County is also granted.

## IV. Conclusion

For the reasons described above, Defendants' motion for summary judgment is granted.

ENTERED:


       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 22, 2015